**Francis J. O'DETTE, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and James M. Carroll, Defendants.**

**Civ. A. No. 64–151–C.**

United States District Court
D. Massachusetts.

Nov. 29, 1965.

Conrad J. Bletzer, Brighton, Mass., for plaintiff.

James C. Heigham, Boston, Mass., for defendants.

CAFFREY, District Judge.

This is a civil action in which the jurisdiction of this court is invoked under the provisions of the Securities Act of 1933, 15 U.S.C.A. 77q, and the Securities Exchange Act of 1934, 15 U.S.C.A. 78j. Plaintiff alleges, and defendants deny, that in the period December 13 to December 17, 1963, defendants, in violation of their fiduciary duty to him, intentionally defrauded him by making false and fraudulent representations of material fact to him which he relied on in entering into certain securities transactions as a result of which he suffered a loss of $9200.00.

I find and rule as follows:

The plaintiff, a resident of Massachusetts, is employed as a printer by a Boston newspaper. The defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. is a corporation organized under the laws of

Delaware. It has a place of business as a broker and dealer in securities in Boston, Massachusetts, and is registered as a broker and dealer in securities with the United States Securities and Exchange Commission consistent with the provisions of 15 U.S.C.A. 78o. The individual defendant, James M. Carroll, is a resident of Massachusetts and has been employed by the corporate defendant as an account executive for over ten years.

Plaintiff began doing business in November of 1957 with the partnership called Merrill Lynch, Pierce, Fenner & Beane, the predecessor of the corporate defendant, and continued from that time through December of 1963 to buy and sell securities through Merrill Lynch.

In 1962 plaintiff opened a margin account with Merrill Lynch in the name of his wife and himself. It is conceded that, though technically in the name of plaintiff and his wife, he in fact controlled and administered the account. In connection with the margin account plaintiff entered into a lending agreement with Merrill Lynch which provided, in part, that Merrill Lynch

"shall have the right whenever in your discretion you consider is necessary for your protection * * * to sell any and all securities * * * in my account * * * to buy any or all securities * * * which may be short in such account and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale * * * or other notice. * * *"

During 1962 and 1963 plaintiff bought securities on margin through Merrill Lynch. In 1963 he engaged in over 30 security transactions, involving, among others, stock in IBM, Xerox, American Photo Equipment, Eversharp, Varian Associates, RCA, Zenith, General Electric, General Dynamics, Texas Instruments, Douglas Aircraft, Lockheed Aircraft, and General Tire.

Plaintiff first made a transaction involving Syntex Corporation in October 1963. Between October 11 and December 13, 1963, he engaged in five complete buy-sell transactions in Syntex, which resulted respectively in profits of $3,500, $4,377, $1,913 and $2,725, and a loss of $1,307. The end result of these five transactions in Syntex was a profit to plaintiff of $11,199. Prior to December 13, 1963 he engaged in two short sales of securities and in November 1963 plaintiff began the practice of going in daily to the office of Merrill Lynch for most of that portion of the day during which the New York Stock Exchange was open. While there he either sat in a chair near the desk of the defendant Carroll, who served as his account executive, or posted himself where he could watch the tape reflecting activities on the New York and the American stock exchanges.

On Friday, the 13th of December 1963, plaintiff arrived at defendants' office at about the time of the opening of the market. During the morning he sold 500 shares of Syntex then held by him at a profit. At 12:29 p. m. he placed an order for a short sale of 500 shares of Syntex at 97⅞. This was a "day order" which would be cancelled automatically if not executed before 3:30 p. m., when the market closed. When the order was placed Syntex was selling below 97⅞. In the early afternoon it momentarily reached that price but fell again. The defendant Carroll at plaintiff's request made several inquiries of the Merrill Lynch New York office seeking to determine if plaintiff's short sale had been executed during the brief time Syntex had reached 97⅞. At 3:14 p. m. plaintiff and Carroll received word from New York that the order had not been executed. They both were aware that a change in margin requirements would become effective the following Monday, December 16, increasing the requirement from 50 to 70 per cent. Both Carroll and plaintiff wanted him to utilize his available margin account funds before the market closed at 3:30 p. m., December 13, because those funds had a greater purchasing power under the about-to-expire 50 per cent margin requirement than they would have the following Monday under the 70 per cent re-

quirement. Plaintiff instructed Carroll to use his remaining "buying power" (i. e., the funds then available in his margin account) to purchase 1,000 shares of High Voltage Engineering and 100 shares of Chrysler, and at 3:20 p. m. Carroll placed this order. At this time Syntex was still below 97⅞, but, three minutes later, the price started to edge upward and at about the same time Carroll instructed the Boston wire room to send to New York a cancellation of the attempted short sale of Syntex at 97⅞. This notice of cancellation was received by a representative of Merrill Lynch on the floor of the American Stock Exchange at 3:26 p. m. Plaintiff and Carroll received a confirmation of the purchase of 100 Chrysler at 3:27 p. m. The market closed at 3:30 p. m. Plaintiff and Carroll received confirmation of the purchase of 1,000 High Voltage Engineering at 3:32, and at 3:49 p. m. they received notice that the Syntex short sale order had been executed shortly prior to receipt of the cancellation notice at 3:26 p. m.

Plaintiff and Carroll both knew that plaintiff did not have sufficient margin to accomplish both the Syntex short sale and the purchase of the High Voltage Engineering and Chrysler. After some discussion between them they agreed that Carroll would talk the matter over with his superiors at the Boston office of Merrill Lynch and that he would "bust" whichever transaction could be cancelled with the least loss the first thing Monday morning, December 16. Carroll ascertained that the High Voltage and Chrysler transaction could be "busted" without appreciable loss and promptly at 10:00 a. m. on Monday, High Voltage and Chrysler were sold at the same price at which they had been purchased Friday afternoon.

Upon plaintiff's arrival at the office of Merrill Lynch, at about 10:05 Monday morning, Carroll advised him that the High Voltage and Chrysler had been "busted" without appreciable loss. Syntex opened that morning at 105⅝. During the day it fluctuated between 105⅝ and 110. Plaintiff remained at the office all day watching these fluctuations as they appeared on the tape and engaged in inconclusive discussions with Carroll as to whether to buy in to cover the short sale. After the market closed plaintiff instructed Carroll to buy 500 Syntex Tuesday morning "at market." However, prior to the opening of the market on Tuesday plaintiff telephonically notified Carroll not to execute the "at market" instruction he had given the previous day. Plaintiff arrived at the Merrill Lynch office shortly after 10:00 a. m., Tuesday, December 17, and watched the activity of Syntex as recorded on the tape. It continued to rise in price and when it reached 115 plaintiff instructed Carroll to cover the short sale. At 12:46 p. m. Carroll placed an order to buy 500 Syntex "at market." This order was immediately executed—200 shares at 116, 200 at 116½ and 100 at 117. This resulted in a loss to plaintiff of $9200.00.

At all times material to this transaction Syntex was listed and traded on the American Stock Exchange. High Voltage Engineering and Chrysler were listed and traded on the New York Stock Exchange. Both are national securities exchanges.

On the basis of the foregoing, I rule that plaintiff has failed to prove any fraud, concealment of or misrepresentation as to any material fact on the part of either the corporate defendant or the individual defendant. The most that has been shown herein is that both plaintiff and defendant Carroll forgot that the Syntex short sale at 97⅞ had not been cancelled at the time that plaintiff decided to buy the High Voltage Engineering and Chrysler to use up his available margin. Whatever else it might be, the conduct reflected by the record in this case does not constitute fraud, misrepresentation, or the violation of fiduciary duty.

Judgment for the defendants.